Thank you. May it please the court, I'm Gordon Ball, Knoxville, Tennessee, and I would like to reserve five minutes if I could. At page five of defendant pilot's brief, they write, Pilot like other retail sellers of gasoline as well as sellers in myriad other industries require that a preauthorization hold be placed on a customer's credit line to ensure that they receive payment when a customer purchases gas at the pump. There is no dispute as to the following. Defendants require a preauthorization hold to be placed on a customer's credit line. Now let's talk about that in just a minute if we could, as to what that really is. When we as customers pull up to a gas station, and in this instance, Pilot or Love, and we look at the, and we're going to use our credit card, pump our gas, and we look at the amount that they're going to charge us, in this case, it's right now I think 350 I filled up last night, and that we accept it. So an implied contract is in form at that point in time. We accept that we'll pay for that amount of gas for what we pump. It is undisputed that Pilot and Love never tell the customer that they are, that they require a hold on the customer's credit. This is our case. Pilot and Love's breach of the implied contract by adding value to the Pilot and Love preset the hold in the amount without the customer's knowledge. The amount of the hold is predetermined by Pilot and Love for their security purposes. That's what they say in paragraph five of their brief. And it's set before you and I ever pull up to the pump. But the duration of the hold isn't set by the gas stations, is it? Yes. I thought the duration of the hold was set by the- Oh, I'm sorry, you said duration. Duration. Duration. Duration is set, and maybe not set because different credit cards hold it for different days, but the duration of the injury occurs, Judge Larson, at the time you and I hang up the pump. Well, this is kind of theoretical. I mean, what injury did your client suffer? The client suffered his loss of value of his credit. Think about it. Well, did your client attempt to use his credit and discover that he didn't have it? No, no, he didn't. And Judge Collier used an unpublished northern district of, I believe, Illinois case to say that hypothetically we didn't use or attempt to use our credit because we didn't know about it in most instances. Now, Mr. Thompson in the Love case did know about it because he, like some of us, have an app that dings when you pump gas in your car, and you get dinged for $150. So he did go, he went back to Love's and asked them, you know, what is this? Right, but don't you say somewhere in your brief that if the credit card, if the hold had been released the moment that he hung up, you know, so you put the nozzle back in and now the, you know, the transaction goes through to the credit card company and now it's released, you don't have an injury? I don't think, I think the injury occurs. Because of the, go ahead. I think the injury occurs, Judge Larson, when you hang the pump up and they put the hold on it. The point is that's a theoretical injury to your clients as opposed to an actual one. It's what could happen, not what did happen. I mean, what did happen is the hold was placed on them, but then there's nothing, no other part of the story. The hold was placed on it and extra value was given for their security. The gas station, the defendants in this case, knew when they did that it wasn't going to be placed for a second. It wasn't going to be taken off for a second. They knew that it was going to the credit card companies and so it wasn't, the argument of theoretical is like for a second. When does the injury, so we were working on this, so you pump the gas, put it in the car. I assume the hold goes on the minute you initiate the transaction, right? I put my credit card in, now I'm pumping the gas, hold's on. Is it? Now I'm done pumping the gas, I hang the nozzle back up. In your world, if they took that hold off the minute that credit card transaction processed, so you hang up the nozzle, it's done, no injury. If they took the hold off, they know when you hang up the pump that you have pumped $43.09 worth of gas. So that's what they should charge you. There should be no hold unless you're told about it pre-pumping. But the people who kept the hold on for longer than the, so they put a $150 hold on. In your world, if they took that $150 hold off the minute you hung up the nozzle, you'd be good, no problem. There's still, if they took the hold off in a minute, there's still an injury because they haven't been told about it. It may be a trifling, it may be a trifling injury. What would telling them, it would be the same, it would be the same injury whether they're told about it or not. They could, if they were told about it, they could choose to walk inside and pay with their credit card inside with no hold. That's why, that's why this is not a credit card company case. It's a gas station retailer case because they cause this and they do it. Now, think about it. If there was no value in that hold, why would they do that for security purposes? That's the question. Let me ask you, when you keep using the word value, does the gas station get any, do they get any profits as a result of this hold, additional profits? Judge Bush, they don't get any money profits. So when there's a charge, it would seem like they would get a credit with a credit card company of making a sale, say it's a $100 hold. Would they not get a credit with a credit card company for $100 of making a sale for $100, the service station? Would the service station get a credit initially with the credit card company of having sold $100 worth of gas off of a $100 hold? What the service station gets is the security of knowing there's money there. Right. I know that part, but I just want to make sure there's not anything they're getting in addition to that security. No, they get that security. They don't have to. They don't get the interest rate or the $100 or whatever. No, but they do get the security of knowing that value is there if they need it. Well, presumably when the transaction is over, they don't need it anymore, do they? Well, that's what I'm saying. They don't need it because they know the exact amount. When you pump your gas today and you put, again, $43.09 in, that's what you should be charged because they know exactly. But they don't control how long the hold is on. That's the credit card company. They know. So there's no causation. They didn't cause your harm. Yes, they did. They know when they require this hold, and they require it. They know it has to be held for a period of time. It's not the credit card companies that cause the damage in this case. Because they know. Because it's, if you will, I didn't mean to interrupt you. No, I'm just, if they know that some third party might take some action, they're responsible for the action that the intervening third party might take? It's not, and we never got to develop this because obviously we never got to first base in this case. But this, this is an agreement between the credit card companies and the defendants because the defendants require it. Now the credit card companies go along with it, but if you walk, as I said, if you walk right inside the store and use your same credit card, there is no hold. So the credit card companies don't benefit at all other than getting piled in and lost business. And it doesn't really matter whether they benefit at all. What matters is who caused your harm, your alleged harm. The defendants, because they required the hold without telling us and it has value. There's nothing between the defendants and the credit card company where they tell the credit card company you have to hold this for two days or three days? Quite frankly, Judge Bush, I think there is. I think there is. You allege that in your complaint? I'm sure we do. We didn't sue the credit card companies. We didn't sue American Express and the credit card companies because of the, probably the arbitration, actually because of the arbitration clauses in their contracts. We couldn't get around it, unfortunately. But that's the, we again say that credit has value or they would not have taken it. Well, they didn't take your credit. Well, what did they do with it? If they didn't take, and again, I'm not arguing with you. I mean, I understand that they, that there's a, if your client has a credit limit of $1,000, which you didn't actually allege what your client's credit limit is, but I presume there's no credit card in the country that would be issued to anybody that wouldn't have some credit limit, right? So, I assume that's true that your client doesn't have unlimited credit. So, it is true that for that moment in time, let's say they have a $1,000 credit limit, now they only have $850, but your client didn't want to use it. So, what's the value of credit? It's not cash. It's not that they went into your client's bank account and took $150. We actually put in a formula from an economist that could turn that into a concrete cash amount. Now, it may be pennies, but when you pump a million times a day, it runs into a lot of money. So, we, but we never got to that point. Judge Collier kicked us out on an Article III standing issue. So, we never got to develop what this case is really about. Let me, if I might, I want to quote Judge Stranch in the Emhoff case. And the facts were obviously different in the Emhoff case where she says, even a recipient of a junk fax on a computer who deletes without printing suffers a loss. The value of the time necessary to realize that the inbox has been cluttered by junk had value. Now, if I, and I relate that clearly to our loss of value, loss of credit, where it goes to the defendants for their security purposes. And if it didn't, again, and I don't mean to beat this horse to death, but if it didn't have value, why did they take it? The next part of that is the traceability. And it was the defendants under the traceability, it was the defendants who required the freeze. It was defendants who set the freeze and the amount. It was defendants who kept the freeze secret. Pilot and Loves were the folks who knew how long the freeze would last and failed to disclose that to the consumer, the customer. The injury can easily be traced to their conduct. Certainly, the credit card companies went along with the defendants who required it be done for their security. Article III standing does not require that the defendants be the most immediate cause. It only requires that the injuries be fairly traceable to the defendants. And that's the Parsons case of this court in 2015. Parsons provided, however. Time is up, Mr. Baum. Oh, it is? I didn't get there. Okay. Thank you. Now, I understand Mr. Brody is going to speak first. Yes, Your Honor. How are you all going to divide your time? We'll split it down the middle, although Mr. Riley has been gracious enough to say that if the court is questioning me when I hit the 10 minutes, that he will cede some of his time. It may please the court, Steve Brody for the pilot defendants. I want to address the points that the court raised with Mr. Ball, and I'll take them in the order in which they were raised. As to the question of what is the harm here, or who took the alleged action that caused the alleged harm, we don't think there's any harm here. I think the court is correct in focusing on the credit card issuers, and we see this explicitly in the complaint that was filed by the four plaintiffs who sued the pilot defendants. Each plaintiff separately alleges, and this is paragraph 65, Plaintiff Mosley, but they all alleged the same thing. They expected that once a hold of any amount was imposed, it would be lifted as soon as they returned the fuel nozzle to the pump. And so the complaint is not with the fact that a hold was placed on the cards, but with the fact that once it was, after they returned the nozzle to the pump, Judge Larson, as you observed, that it was kept on for 24 to 72 hours, and the complaint itself alleges affirmatively that that was entirely within the discretion of the card issuers. And so in this way, the district court's opinion, and this goes to traceability, was entirely consistent with this court's decisions in both the Binno case versus the American Bar Association, which dealt with the American Bar Association standard 503, requiring the valid and reliable test for admissions purposes for accreditation of law schools, and also with the Amex case, which dealt with the imposition of a fuel tax on fuel that was designated for duty-free export at a shop that was selling gas on the U.S.-Canadian border, sort of past the point of no return into Canada. That's traceability. As to redressability, Mr. Ball indicated that he has an economist who has come up with a formula that would calculate interest on held credit, but the district court correctly and quickly dealt with that issue by saying that merely because you say you have an expert who's identified a formula to calculate something, if it's not properly calculable as an economic injury, which is what it would be, then it doesn't clear the pleading threshold, and so there's no redressability here either. I understand we're talking about standing, and I understand that it's appropriate to talk about standing first, but to put this another way, perhaps more in terms of causation, the gist of the argument is that the harm that is alleged is not alleged to have been caused by pilot and love. Is that right? That's right. That's a simplistic way of putting it. That is absolutely correct. And you're right, that can be characterized as traceability. That's correct. Of course, we think, as a threshold matter, that there's no harm here. There's no injury, in fact. And there is a big difference. We heard the reference to the Imhoff case, which was a Telephone Consumer Protection Act case, and there is a big difference between the TCPA cases. We have two TCPAs here. We have the Tennessee Consumer Protection Act as well. But the Telephone Consumer Protection Act cases are very different from what we see in Spokio and what this Court looked at in Wall v. Michigan Rental. And the difference is, in the TCPA cases, Congress has expressly stated what the injury is. And when this Court decided Imhoff, it cited to and quoted approvingly from the 11th Circuit in the Palm Beach, I think it was Palm Beach Golf Center BOCA case, where the Court said that Congress identified the injury in fact for purposes of standing in TCPA cases as the occupation of a fax line. Now, those of us in this room might disagree with Congress's judgment that that should constitute an injury in fact, but certainly, as Justice Scalia observed in the Lexmark case, it's not for the courts to second-guess a situation where Congress has created a right of action. And that was a very different situation from Wall and from Spokio. And Spokio was a very good example, Justice Alito's opinion there, under the Federal Consumer Credit Reporting Act, where merely alleging that somebody had, Spokio in that case, had published false information, was not an allegation of a concrete harm. And that the 9th Circuit, in focusing on the particularized allegation of a violation, had not looked at whether there was a concrete injury. And for that reason, the case was remanded to the 9th Circuit with instructions to look at that. That's the same thing that this Court did in Wall v. Michigan Rental, a case with parallels to what we see here, where the Court said there may have been a technical violation by the failure to put an apartment security deposit into a properly regulated bank and to disclose what that bank was on the lease. But you got the security deposit back. So there may have been a procedural issue, a technical violation of the state statute. Counsel, let me ask you about the causation, or the injury, actually. If there had been a named plaintiff who actually tried to buy something and was denied the ability to buy something using the credit card, would you not agree that there would be an injury in that circumstance? There could potentially be an injury in a circumstance with a different plaintiff, with a different set of facts. Ultimately, if that plaintiff had a card denied for insufficient funds tied specifically to the existence of the hold before it was released by the card issuer, and that plaintiff reached into his or her wallet and took out a $20 bill and paid cash, there may still be no injury. But you could concede there could conceivably be an injury there. But I think you would still argue that there's no redressability or traceability for that plaintiff as well? Traceability and redressability would be a very fact-specific inquiry, I think, depending on the ultimate result of that inability to make the purchase. But would you argue that that's still the fault of the credit card company, not the gas station? I think you would have serious traceability concerns in that circumstance because you would run into the same thing we see in BINO and the same thing we see in Amex, where it's the independent action entirely within the discretion of the card issuer that led to... What I'm getting at here, let me finish this in just a second. What I'm getting at is whether or not the case should be dismissed with prejudice or without prejudice. So it seems to me if the problem here is traceability, that that would be a reason why this should be dismissed with prejudice because that would apply to any conceivable plaintiff. Whereas if the problem here is just injury, then it should be without prejudice because conceivably there could be a plaintiff out there who could bring this claim, who would have all the requisites of standing. And Judge Bush, I would say absolutely not in this case because these plaintiffs have affirmatively alleged facts that show that they do not have standing. They don't meet the threshold on any of the three requirements for Article III standing. And case law tells us that a plaintiff, one, a plaintiff without standing does not have standing to add another plaintiff, one. And two, there needs to be standing at the inception of the litigation for there to be jurisdiction. And without it... So any amendment here would have to take the form of adding a different plaintiff with a different set of allegations. The dismissal of this case with prejudice would have no effect on the ability of a plaintiff who had standing to initiate the same or a similar cause of action because the dismissal with prejudice would be based only on standing. It's not based on... and it's peculiar to these plaintiffs. Absolutely, Judge Gibbons. That is absolutely correct. And so in this case, the dismissal with prejudice was entirely correct for the reason that the only way to amend would be to find a new plaintiff with a different set of facts and try to clear the standing hurdle in that case. And the case law is that a plaintiff without standing cannot add a plaintiff with standing. Is that right? That is correct, Judge Gibbons, and we cite those cases in our brief, and I see that I'm out of time. All right. Mr. Riley. Good morning. May it please the Court. Chris Riley on behalf of the Loves Defendant. I will be brief other than to just address a couple of quick points. The only real difference that the plaintiffs have alleged between Loves and Pilot in this case deals with the plaintiff, and they say that Mr. Thompson had knowledge of the hold because of an app, that he learned of it during the pendency of the hold. We don't believe that that has any impact on whether or not he suffered an injury because he has still not alleged any particular injury of fact. He still has not alleged that his card had a limit, that the hold caused him to reach a limit, that he attempted to make a purchase, that he couldn't make a purchase because of the hold, and that he didn't have any other means. It has a little bit to do with it to the extent that the injury, according to Mr. Ball, is the failure to disclose. If the hold was disclosed to his client, that would address that part of the lawsuit. But it wouldn't address the larger point. It still doesn't address the injury. Even if the allegation about a failure to disclose is just setting forth the basis of his claim, but not the basis of an injury. So the failure to disclose still must cause an actual injury. And to cause an actual injury, he needs to make the allegations of fact that would not make it the hypothetical injury, Judge Gibbons, that you had brought up earlier. If he had a credit limit, if it reached the credit limit hold, if he had tried to make a purchase, and if he couldn't make the purchase, then there might be an injury. And I would, and we've mentioned this in our briefs, even if he had tried to make a purchase and he couldn't make the purchase, that's still not necessarily an injury if he could have, as Mr. Brody said, paid cash, had another credit card, had a debit card. We don't need to worry about that. Correct, because he hasn't made any of those arguments at all. Can I ask about this causation point? So if the injury is really due to the 24 hours, 48, 72 hours, then that's placed on by the credit card companies, not by you. That all seems right to me if you can't control the acts of intervening third parties, but presumably you have some kind of contractual relationship with American Express, Discover, Visa, MasterCard. And if you had a contract with them where you knew Visa will put three days on, Discover will put 24 hours, now should we say that you are actually responsible? It is traceable to you because you know once you place that hold, it's going to set in motion a 72-hour hold if it's a Visa that's used, because you have a contractual relationship with Visa that lets you know it's going to be 72 hours? Well, there's been no allegation in the complaint about any kind of contractual relationship whereby either of the defendants had knowledge that the hold would be for any particular time. So there hasn't been an allegation about that in the case. I still believe, though, that that would still raise the same traceability issues just because even if we have knowledge, it's not our knowledge that's causing the injury. It's the independent acts of the card issuer. Well, but they're not independent if they're obligated to do it by contract with you. Well, there's no allegation that it was Loves or Pilot that obligated the card issuer to keep the hold in place for a certain period of time. There hasn't been an allegation, in fact, and I believe the allegations is exactly the opposite. They specifically allege that it's the card issuer who determines the length of the hold. So they specifically allege the opposite of that. And so without an allegation that there is some requirement by either Loves or Pilot on the duration of the hold, we don't believe that that creates any traceability issues based on the allegations in the complaint itself. The other aspect of that, and then I'll get off that issue, is there's no allegation, too, that during the pendency, the hold, Loves or Pilot actually gets any money from the card company. They have not alleged that, okay, if there was a $125 hold, that Loves automatically gets $125 for a period of 72 hours, and then the money comes back to the card company. There's not an allegation. So we haven't gotten any value from this by some time value of money. The last issue, and I believe Mr. Brody addressed it sufficiently, was just it's the Zurich and the Zingara cases that talk about that a plaintiff, you can't add. Once this plaintiff doesn't have standing, he cannot simply just add a new plaintiff who has standing in this present lawsuit. Let me make sure I understand what your position is then. So if we dismiss with prejudice, then if there's another customer out there who wants to bring another class action against your company and they have standing, then there wouldn't be any collateral estoppel there. Then they could just bring the suit. Is that what you're saying? They would have to still allege it. They still have to show standing, but there's no collateral estoppel impact of our dismissing with prejudice these particular plaintiffs. Yeah, but we'd have to see what exactly they're alleging. Well, if they just take standing as a given. Okay. The point is there's no issue or claim preclusion by virtue of this case relating to the other plaintiff who does in fact have standing. Right. That case would have to stand on its own with respect to standing and the merits under 12B6. They would have to say that they didn't have knowledge and that there were not stickers on the pump and those kinds of things. And in addition, a class represented could proceed assuming they met all the requirements of a class action. Yeah, they would still have to make all those allegations and the class members themselves would have to fall within that. So they would still have to meet the Rule 23 requirements for a class. Thank you. Thank you. I think, Judge Larson, you hit exactly the point maybe that I didn't make very artfully, that clearly, clearly the credit card companies in Pilate and Love have agreements between themselves. And we didn't sue the credit card companies, again, because of the arbitration clauses. I understand that. But you also didn't make any allegation about there being a contractual relationship between Pilate and Love and the various credit card companies. And maybe we should have. Well, yeah. We can only judge standing based on the allegations in your complaint, right? But the Pilate themselves and Love wrote that they require this pre-authorization. They're the only ones who benefit from it. And again, I go- They wrote where in their brief? Pardon me? They wrote where? Page five of Pilate's brief, they write, Pilate, like other retail sellers of gasoline, require that a pre-authorization hold. I just think it takes a little bit of common sense to understand that they wouldn't be requiring that hold on that credit if that credit were worthless. Well, but even if it- You seem to think there's a zero-sum game here, that just because something might have value to them means that it injures you. And I'm not sure why that is true. Why is it zero-sum? You're taking something of mine in a contractual situation. Well, what is it of yours, really? You're taking my credit. Now, credit has value. The Tennessee Supreme Court in the Morgan case says credit- They're not taking your credit. They're not using your credit to purchase something else. They're limiting- Maybe they're limiting your ability to use your credit, although- They're limiting their liability. They're limiting their exposure. Well, sure.  Well, that's the rub. To your detriment. To your detriment. How is it to your detriment if you didn't want to use it? Because you- Well, if I didn't want to use it, but it's mine to use. It's mine to use. So you're claiming a property right in your credit. I believe I have a property right in my credit. It's mine. Well, what if the bank revoked you the next day? Saying, like, well, you took something of value from me? You'd have a claim against your bank? The bank is not in this. That has nothing- Well, I know you haven't sued the bank because you can't. It's pilot and love taking my credit after we have agreed for me to pay $3.40 a gallon. That's the rub. That's where it is. Thank you. We appreciate the argument that you all have given, and we'll consider the case carefully. And I think there are no other cases.